UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 22-cr-357-001 (APM) |
| | : | |
| MYLES ALLEN | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The Defendant trafficked in controlled substances and armed himself with the below-depicted firearms, in furtherance of his drug trafficking activities:

 

Consequently, he pleaded guilty to one count of Possession of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c), on August 31, 2023. For the reasons herein, the Government respectfully requests that the Court impose the mandatory minimum sentence of five years of imprisonment, to be followed by five years of supervised release.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

On October 31, 2022, at approximately 9:00 a.m., the Bureau of Alcohol,

Tobacco, Firearms, and Explosives ("ATF") executed a residential search warrant at the Defendant's home, located at 1160 First Street NE, Apartment 826, Washington, D.C. Law enforcement knocked repeatedly on the front door of Apartment 826 while announcing their presence with a search warrant. Only once law enforcement opened the front door did the Defendant respond to law enforcement. When asked whether others were also inside the apartment, the Defendant lied to police, claiming that there was a child in the residence, which prompted law enforcement to attempt to coax the child out from the doorway to avoid scaring him or her. But law enforcement soon learned that the Defendant's claim was false. Law enforcement entered the apartment and began to clear the unit. Approximately three minutes after the Defendant exited the apartment, his co-defendant Kenneth Hampton exited one of the two bedrooms in the unit, which was later identified as the Defendant's bedroom.

Inside the Defendant's bedroom, law enforcement discovered the following items:

- One Glock 19, 9 mm pistol with a 31-round magazine loaded with a round chambered;

- One Adidas backpack, which contained 200 grams (including packaging) of marijuana that was also packaged for sale, a digital scale, and two partial bottles of suspected Promethazine with Codeine with the label removed;

- One Pioneer Arms "Hellpup" 7.62x39 mm rifle caliber pistol loaded with

2

> a round chambered, found a short distance of a silver backpack and prescription bottle;

- 4.4 pounds of marijuana in a bedroom closet;
- One 31-round (Glock) magazine loaded with 9mm ammunition;
- Seven pint bottles which contained Promethazine in garbage can; and
- Three empty pint bottles of Promethazine in a garbage can.

In the Defendant's bedroom closet, officers discovered two prescription bottles which contained approximately 102 pills, some of which were identified as schedule II opioids. The pills were adjacent to a large amount of cash currency (totaling $1,767) and a Glock 19 (serial number BRNU311) with a loaded 31-round magazine inserted, which was linked via NIBIN lead to a homicide that had occurred in Washington, D.C., just eight days earlier.

The Defendant has acknowledged that he at least jointly, if not solely, possessed each of the items listed above. He knowingly and intentionally possessed oxycodone and marijuana with the intent to distribute it to others. He possessed a Hellpup rifle in furtherance of this possession with intent to distribute controlled substances. Also found in the apartment were, among other things, an unlabeled pill bottle found on a bed which contained 33 pills, at least some of which were oxycodone.

The items found in the Defendant's bedroom during the execution of the search warrant were indicative of his ongoing practice of drug distribution, which he promoted on social media. The Defendant used his Instagram accounts,

"@bagdat100up" and "lilbag100up," to post blatant advertisements, photographs, and videos depicting him holding the firearm with which he is charged; and advertising for sale substances that appear consistent with the very drugs found in his bedroom.

For example, on October 28, 2022, the Defendant posted an Instagram Live broadcast showing him holding an AK-pattern pistol consistent with the one recovered on October 31, 2022:

 

Similarly, in February 2022, the Defendant posted a photograph of him and his co-defendant, Kenneth Hampton, holding large amounts of cash and standing next to a firearm placed on a table, just to the Defendant's left:

4



In addition to promoting his unlawful gun-toting lifestyle, the Defendant explicitly advertised the sale of controlled substances on his Instagram accounts. In August 2022, he published a post offering drugs for "50 a pill," with an accompanying photograph of a hand holding a large quantity of pills stamped "ALG 265," a pill containing oxycodone:



And, also in August 2022, the Defendant posted images on Instagram showing pills marked "RP 30" and "K 56":



Similar pills were found in the Defendant's bedroom on October 31, 2022, and tested positive for schedule II controlled substances. Notably, a firearm possessed by the Defendant was immediately accessible from the location of the pills, showing the nexus between the Defendant's intent to distribute narcotics and his possession of the firearm.

The Defendant was initially indicted on three counts: (1) unlawful possession with intent to distribute oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); (2) unlawful possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D); and (3) using, carrying, and possessing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c). However, the Defendant received the benefit of a plea agreement and was permitted to plead guilty to only one count of using, carrying, and possessing a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c).

## II. LEGAL STANDARD

Pursuant to 18 U.S.C. § 3553(a), the Court shall impose a sentence that is sufficient, but not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to "provide the defendant with needed educational or vocational training." 18 U.S.C. § 3553(a)(2). In addition, the Court must also consider "the nature and circumstances of the offense and the history and characteristics of

the defendant;" the types of sentences available, the Sentencing Guidelines; any pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. *Id.* § 3553(a).

### III. GUIDELINES CALCULATION

The Government agrees that, because the Defendant was convicted of a crime that carries a five-year mandatory minimum sentence of imprisonment, the Guidelines range is five years of imprisonment, pursuant to U.S.S.G. § 2K2.4(b).

The Government has no objections to the PSR.

### IV. ARGUMENT

A five-year sentence in this case is appropriate. In possessing a firearm in furtherance of his drug trafficking activities, the Defendant was prepared to bolster his unlawful dealings with the threat of violence—a lethal combination that regularly claims lives in our community. The Government's recommended sentence is also designed to deter others, promote respect for the law, and fulfill the other purposes of sentencing.

#### 1. The Nature, Circumstances, and Seriousness of the Offense

Although "possessory" gun offenses are often perceived to be "minor" ones, they are anything but. As the Court is well aware, our community has recently faced staggering levels of gun violence. D.C. saw over 200 homicides in each of 2021 and 2022, the highest level since 2003. *See* MPD, *District Crime Data at a Glance*.[1] About

---

[1] https://mpdc.dc.gov/node/197622

8

82 percent of the 226 homicides in 2021 involved the use of a firearm. *See* MPD, *Annual Report 2021*, 27.[2] Moreover, many shootings in this community are driven, at least in part, by the drug trade. Thus, merely possessing a firearm—especially in relation to a drug trafficking crime—is serious. After all, all instances of gun violence are also instances of gun possession.

Here, the Defendant possessed two firearms, ammunition, and a distribution quantity of marijuana and pills. The seriousness of the Defendant's crime is heightened because of how the Defendant advertised both his gun possession and his drug trafficking, as discussed above. The Defendant's public postings about his unlawful activities illustrate the brazenness with which he broke the law. A five-year sentence is appropriate to demonstrate to the public that illegal possession of drugs and guns is nothing to be proud of, and carries severe consequences.

**2.   The Defendant's History and Characteristics**

The Defendant, who is 23 years old, has a prior violent conviction of significant concern, which is referenced in paragraph 25 of the PSR. He has three subsequent arrests (two of which involved controlled substances, and two of which involved firearms). *Id.* ¶¶ 30–32.

The PSR notes that the Defendant has abused Percocet and marijuana on a regular basis, up until his arrest in this case. *Id.* ¶ 45. The PSR accordingly recommends a drug treatment program, *id.* ¶ 68, and the Government concurs with

---

[2] https://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/publication/attachments/AR_2021_FINAL_lowres.pdf

this recommendation.

### 3. The Need to Promote Respect for the Law and Deterrence

As noted above, the Defendant's conduct occurred against the backdrop of historically high levels of violence in this city. Given the catastrophic impact of guns and drugs on our community, a high sentence in this case is warranted. Some individuals flaunt and relish the illegal possession of firearms and drug trafficking, either not understanding or not fearing the consequences. Individuals who engage in this type of behavior must understand that their conduct is unacceptable to the community plagued by the consequences of their illegal activity. A five-year sentence, as indicated by the Guidelines and the offense statute, is designed to deter both the Defendant and others from engaging in such conduct.

### 4. Other Factors

The Government's recommended sentence would also give the Defendant ample time to pursue the Residential Drug Abuse Program and the Occupational Education Program, as recommended by Probation. PSR, ¶¶ 68–69. These programs, and additional educational and vocational training, will hopefully prevent him from reoffending.

## V. CONCLUSION

For the foregoing reasons, the Government recommends that the Court sentence the Defendant to five years of incarceration to be followed by five years of Supervised Release. The Government also requests that the Order of Forfeiture, ECF No. 33, be made part of the sentence and included in the judgment, as the parties

have previously agreed. *See* ECF No. 30 at 8–9.

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        DC Bar No. 481052

By: <u>*/s/ Adam L.D. Stempel*</u>
    ADAM L.D. STEMPEL
    Special Assistant United States Attorney
    DC Bar No. 1615015
    SITARA WITANACHCHI
    DC Bar No. 1023007
    SOLOMON S. EPPEL
    DC Bar No. 1046323
    Assistant United States Attorneys
    601 D Street, NW
    Washington, DC 20530
    (202) 252-6736
    adam.stempel2@usdoj.gov